NATIONWIDE MUTUAL INSURANCE CO. v. STEVE E. LANKFORD, LINDA LANKFORD, WALTER SCOTT LANKFORD AND NANCY B. OLDHAM

No. 9310SC1143

(Filed 4 April 1995)

**Insurance § 439 (NCI4th)— parental obligation to pay child's medical expenses—claim covered by parents' insurance policy—"family member" exclusion invalid**

The contract of insurance between plaintiff and defendant parents could properly be construed so as to provide UM coverage for their claim for medical expenses incurred by their unemancipated minor son grounded upon the parental support obligation, and the language of defendant son's policy had no bearing on the right of the parents to pursue that coverage under their separate policy; furthermore, the parents' claim was not barred by the "family member" exclusion for UM coverage in their policy, since it was repugnant to the purpose of UM and UIM coverage and therefore invalid.

**Am Jur 2d, Automobile Insurance §§ 287 et seq.**

**Validity, construction, and application of provision of automobile liability policy excluding from coverage injury or death of member of family or household of insured. 46 ALR3d 1024.**

**Validity, under insurance statutes, of coverage exclusion for injury to or death of insured's family or household members. 52 ALR4th 18.**

Appeal by defendants from summary judgment entered 11 August 1993 by Judge Jack A. Thompson in Wake County Superior Court. Heard in the Court of Appeals 9 June 1994.

*Bailey & Dixon, by Dorothy V. Kibler and Kenyann G. Brown, for plaintiff-appellee.*

*Staton, Perkinson, Doster, Post, Silverman & Adcock, by Jonathan Silverman and Elizabeth Myrick, for defendants-appellants Steve E. Lankford, Linda Lankford, and Walter Scott Lankford.*

JOHN, Judge.

In this declaratory judgment action, defendants-appellants (defendants) argue the trial court improperly granted summary judgment in favor of plaintiff Nationwide Mutual Insurance Company (Nationwide), thereby effectively barring defendants Steve and Linda Lankford (Mr. and Mrs. Lankford, the parents) and their son, defendant Walter Scott Lankford (Scott), from raising any claims for uninsured motorists (UM) coverage under the parents' insurance policy with Nationwide. We agree the parents were erroneously denied coverage by the court's ruling.

Pertinent factual and procedural information may be summarized as follows: On 19 March 1992, Scott (a minor child on that date) was operating a 1984 Chevrolet Camaro on Rural Paved Road 1001 in Sanford, North Carolina. Scott was seriously injured when a 1983 Dodge, operated by defendant Nancy B. Oldham (Oldham), crossed the center line and collided with his Camaro. It is undisputed that Oldham's vehicle was not covered by automobile liability insurance at the time of the collision, and that Scott's resultant medical expenses for his injuries totalled $19,229.41.

Nationwide had previously issued two personal automobile insurance policies to members of the Lankford family which were in effect on 19 March 1992—Policy Number 61-32-J-586-038 (Scott's policy) and Policy Number 61-32-B-499-546 (the parents' policy). Scott's policy, providing coverage for his separately-owned Camaro, contained UM coverage of $50,000.00 per person and $100,000.00 per accident. The parents' policy, listing a 1990 Nissan and a 1985 Ford as covered vehicles, also afforded UM coverage in the amount of $50,000.00 per person and $100,000.00 per accident.

Scott and his parents subsequently filed claims with Nationwide under both policies to recover their damages. On 8 June 1992, Nationwide tendered a check for $50,000.00 to the attorney representing the three, contending that sum represented the total amount of UM coverage applicable to the claims of both Scott and his parents. Nationwide's tender was rejected, however, and on 23 June 1992, two separate civil actions against Oldham were filed in Lee County Superior Court. In their action, Mr. and Mrs. Lankford sought to recover expenses incurred for Scott's medical care. Scott's separate lawsuit, brought on his behalf by guardian *ad litem* Linda Lankford, included claims to recover damages for "permanent physical injuries, scarring and great pain and suffering [and] . . . severe emotional distress."

On 30 November 1992, Nationwide filed the instant action in Wake County Superior Court seeking declaratory relief under N.C. Gen. Stat. § 1-253 (1983) as well as a directive that the parents and Scott interplead their respective claims within the policy limits of UM coverage provided in *Scott's* insurance policy. Nationwide alleged "[t]he parents' policy provides no coverage for claims arising out of [the 19 March 1992] [ac]cident," and that "[a]ny and all claims asserted by [the parents] that arise out of the [ac]cident are derivative of Scott['s] . . . claim for bodily injury." Nationwide sought a declaration that the parents' policy provided "no coverage . . . for any damages which Ms. Oldham is or may become legally responsible [for] because of injuries to Mr. Lankford, Ms. Lankford, or . . . Scott Lankford[.]" Nationwide further requested a determination that its "maximum limit of liability is $50,000.00, the liability limit for Uninsured Motorist Coverage under the minor child's policy." As all parties had stipulated that the combined damages of Scott and his parents exceeded $50,000.00, Nationwide further suggested that the court "adjudge which Defendant or Defendants is entitled to the sum of money or to any portion."

The parties subsequently filed cross-motions for summary judgment which were heard at the 28 June 1993 civil session of Wake County Superior Court. The court's order, entered 11 August 1993, denied defendants' motion and granted that of plaintiff, stating in pertinent part:

3. The total amount of coverage under any policy issued by Nationwide available to the Lankfords as a result of the March 19, 1992 accident between . . . Scott . . . and Nancy B. Oldham is hereby declared to be $50,000.00;

4. Nationwide, having previously deposited the sum of $50,000.00 with the Wake County Clerk of Superior Court, is hereby discharged from all liability under its Policy Number 61-32-B-499-546, issued to Steve E. Lankford and Linda Lankford, and Policy Number 61-32-J-586-038, issued to Walter Scott Lankford, including any obligation of any type arising out of the lawsuits pending in Lee County Superior Court . . . ;

5. Each of the Defendants Steve E. Lankford, Linda Lankford, [and] Walter Scott Lankford . . . shall proceed to determine the amount of their claims and their interest in the $50,000.00 currently held by the Wake County Clerk of Superior Court;

6. Defendants are restrained and enjoined from any and all further attempts to recover amounts in excess of $50,000.00 from Nationwide . . . .

Nationwide informs us that the monies held by the Clerk were disbursed to Scott following the court's ruling pursuant to the terms of a consent order signed by Scott, Mr. and Mrs. Lankford, the attorney representing both parents and Scott, and counsel for Nationwide.

---

Defendants appeal summary judgment in favor of Nationwide on grounds that "both policies of automobile insurance issued by [Nationwide] afforded coverage for the injuries and damages sustained by the Lankford Defendants."

In their appellate brief, Scott and his parents expound upon the above contention by presenting two basic propositions: (A) that the parents are entitled to recover for Scott's medical expenses under the UM section of the insurance policy issued them individually by Nationwide; and (B) that Scott may also recover under the UM coverage portion of their policy as a "person insured," despite certain exclusions from coverage contained within Scott's own policy. We find merit in defendants' discussion relative to Part A and hold the parents' personal contract of insurance provides coverage for their separate claims in this instance. However, we decline to discuss in detail the contentions raised in Part B, which contain internal inconsistencies and which at times are irreconcilable with other assertions made in defendants' brief.

## A.

With respect to their first argument, defendants begin with the assurance that the parents "are simply seeking *coverage they contracted for in their own policy* for the injuries they sustained due to necessary medical treatment for their minor child caused by a negligent uninsured motorist." (Emphasis added). In other words, "[Scott] is not claiming on his parents' policy and the parents' [sic] are not claiming on [Scott's] policy." That being so, defendants correctly observe that "this is neither an intrapolicy [n]or [an] interpolicy stacking case." *See, e.g., Mitchell v. Nationwide Ins. Co.*, 110 N.C. App. 16, 23-25, 429 S.E.2d 351, 354-56 (1993) (*intrapolicy* stacking involves aggregating the limits of liability for different vehicles insured under a single policy; *interpolicy* stacking means aggregating the limits of coverage contained under two or more contracts of insurance), *aff'd*, 335 N.C. 433, 439 S.E.2d 110 (1994); *see also Proctor*

*v. N.C. Farm Bureau Mutual Ins. Co.*, 335 N.C. 533, 534-35, 439 S.E.2d 112, 113 (1994).

The fundamental question herein, therefore, is whether the policy of insurance issued to the parents provides by its own terms UM coverage of their claim for reimbursement of Scott's medical expenses. Our consideration of this issue is guided by this Court's recent statement that, "[i]n determining whether coverage is provided by a particular automobile liability insurance policy, 'careful attention must be given to [1] the type of coverage, [2] the relevant statutory provisions, and [3] the terms of the policy.' " *Bray v. N.C. Farm Bureau Mut. Ins. Co.*, 115 N.C. App. 438, 441, 445 S.E.2d 79, 81 (quoting *Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 142, 400 S.E.2d 44, 47, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991)), *disc. review allowed*, 337 N.C. 800, 449 S.E.2d 565 (1994).

In the case *sub judice*, because of Oldham's failure to have in effect bodily injury liability insurance at the time of the collision, we are concerned with UM coverage. The relevant statute on 19 March 1992 (and now) is N.C. Gen. Stat. § 20-279.21(b) (1993), which comprises a portion of the Financial Responsibility Act and provides in part as follows:

> (3) No policy of bodily injury liability insurance . . . shall be delivered or issued for delivery in this State with respect to any motor vehicle registered . . . in this State unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury, sickness or disease, including death, resulting therefrom . . . .

> . . . .

> For purposes of this section "persons insured" means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above or any other person or persons in lawful possession of the motor vehicle.

In accordance with G.S. § 20-279.21(b)(3), beyond obtaining the standard liability and medical payments coverage, the parents also contracted in their Nationwide policy for the following UM coverage:

> INSURING AGREEMENT. We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:
>
> 1. **Bodily injury** sustained by an **insured** and caused by an accident;
>
> . . . .
>
> **"Insured"** as used in this Part means:
>
> 1. You or any family member.
>
> . . . .
>
> LIMIT OF LIABILITY. The limit of bodily injury liability shown in the Declarations for "each person" for Uninsured Motorists Coverage [$50,000.00] is our maximum limit of liability for all damages for **bodily injury**, including damages for care, loss of services or death, sustained by any one person in any one auto accident.
>
> Subject to this limit for "each person," the limit of bodily injury liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage [$100,000.00] is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident. . . . This is the most we will pay for **bodily injury** . . . regardless of the number of:
>
> > 1. Insureds;
> >
> > 2. Claims made;
> >
> > 3. Vehicles or premiums shown in the Declarations; or
> >
> > 4. Vehicles involved in the accident.

The parents individually filed suit against Oldham (the uninsured tortfeasor) seeking recovery of present and future expenses resulting from Scott's medical care. The declaratory judgment action herein arose to deal with the eventuality that a tort recovery against Oldham proved to be uncollectible and Mr. and Mrs. Lankford thereafter sought indemnity from Nationwide.

NATIONWIDE MUTUAL INS. CO. v. LANKFORD

[118 N.C. App. 368 (1995)]

Because Scott was an unemancipated minor at the time of the events giving rise to the lawsuit filed by his parents, they allege an obligation to provide him support and necessary medical treatment. *See, e.g., Flippin v. Jarrell,* 301 N.C. 108, 120, 270 S.E.2d 482, 490 (1980), *reh'g denied,* 301 N.C. 727, 274 S.E.2d 228 (1981). The right to bring an independent cause of action for recovery of medical expenses is, they continue, concomitant with these parental duties. As our Supreme Court has stated:

> When an unemancipated minor is injured by the negligence of another, two claims may arise. The minor has a claim for his or her losses, and the parent has a claim for the loss of the child's services during minority and the medical expenses reasonably necessary for treatment of the minor's injuries.

*Bolkhir v. N.C. State Univ.,* 321 N.C. 706, 713, 365 S.E.2d 898, 902 (1988) (citations omitted); *see also Vaughan v. Moore,* 89 N.C. App. 566, 568, 366 S.E.2d 518, 520 (1988) (citation omitted).

Nationwide argues, however, that because any and all damages sustained by the parents arose out of the single accident for which Scott received compensation under his own policy, the parents' claim is entirely derivative in nature and barred by the terms of *Scott's* insurance policy. In making this assertion, Nationwide points to language in the Declarations section of Scott's policy designating $50,000.00 as "[Nationwide's] maximum limit of liability for all damages for **bodily injury**, including damages for care, loss of services or death, sustained by any one person in any one auto accident," coupled with its tender of $50,000.00 to the Clerk of Court when instituting the declaratory judgment action *sub judice.*

However, we do not perceive the parents' claim as being "derivative" with respect to the provisions and terms of *their individual* policy. As noted above, our cases have established that the parents of an unemancipated minor injured by the negligence of another obtain an independent cause of action for the medical expenses reasonably necessary for treatment of the minor's injuries. *See, e.g., Bolkhir,* 321 N.C. at 713, 365 S.E.2d at 902 (citations omitted). Admittedly, the parents would have no claim absent bodily injury to Scott. *See South Carolina Ins. Co. v. White,* 82 N.C. App. 122, 126, 345 S.E.2d 414, 416 (1986). However, if the contract of insurance between Nationwide and Scott's *parents* may properly be construed so as to provide coverage for the claim grounded upon the parental support obligation, the language of Scott's policy (by happenstance also issued by

Nationwide) has no bearing on the right of the parents to pursue that coverage under their separate policy.

Thus, bared to its essence, the sole issue before us is whether the provisions of the policy issued to Mr. and Mrs. Lankford provide coverage for the claim pursued in their independent action against Oldham. We note in this context that when construing insurance policies:

> The various terms of [an insurance] policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder.

*Woods v. Insurance Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978).

Bearing the foregoing principles in mind, we focus on the language of the parents' policy, which expressly provides that Nationwide "will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of: . . . **Bodily injury** sustained by an **insured** and caused by an accident . . . ." In the section of the policy detailing the limits of Nationwide's liability, Nationwide defines "bodily injury" as including "damages for care, loss of services or death, sustained by any one person in any one auto accident." In addition, the policy defines "insured" as "You [the named insured, i.e., Mr. and Mrs. Lankford] or any family member."

We hold the above language operates to provide coverage for the claim of Mr. and Mrs. Lankford for Scott's medical expenses. Both parents are "insureds" (named insureds) seeking "compensatory damages" (for medical expenses) from an uninsured motorist (Oldham) for "bodily injury" ("damages for care") sustained by "an insured" (*either* Scott *or* his parents). In arriving at this conclusion, it is neither necessary nor pertinent to consider Scott's distinct claims and coverage, raised under his separate contract of insurance.

Nationwide responds by referring to certain exclusionary language also contained within the policy issued to the parents, to wit:

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for **property damage** or **bodily injury** sustained by any person:

. . . .

> 7. While occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy.

Nationwide maintains that because Scott was "occupying" a motor vehicle "owned by . . . a[] family member [i.e., Scott]" but "not insured for this coverage under this policy" (which specifically listed only a 1990 Nissan and a 1985 Ford), these circumstances fall squarely within contemplation of Exclusion 7, and UM coverage is barred. We disagree.

First, it is well-established that the primary purpose of the Financial Responsibility Act (including G.S. § 20-279.21(b)(3)) "is to compensate the innocent victims of financially irresponsible motorists." *Insurance Co. v. Guaranty Co.*, 283 N.C. 87, 90, 194 S.E.2d 834, 837 (1973); *see also Nationwide Mutual Ins. Co. v. Baer*, 113 N.C. App. 517, 522, 439 S.E.2d 202, 205 (1994) (purpose of the Financial Responsibility Act "has always been to protect innocent motorists from financially irresponsible motorists") (citation omitted). Thus, since G.S. § 20-279.21(b)(3) is "remedial legislation," it is to be liberally construed so as to effectuate its purposes. *Hendricks v. Guaranty Co.*, 5 N.C. App. 181, 184, 167 S.E.2d 876, 878 (1969); *Nationwide Mutual Ins. Co. v. Mabe*, 115 N.C. App. 193, 206, 444 S.E.2d 664, 672, *disc. review allowed*, 337 N.C. 802, 449 S.E.2d 748, 450 S.E.2d 485 (1994).

As a consequence, this Court in a series of decisions has determined that although a "family-owned vehicle" (or "household-owned vehicle") exclusion may be "clear and unambiguous," it will not be upheld by our courts in the context of UM/UIM coverage. *See Hussey v. State Farm Mut. Auto. Ins. Co.*, 115 N.C. App. 464, 468, 445 S.E.2d 63, 65-66, *disc. review allowed*, 338 N.C. 310, 450 S.E.2d 487 (1994); *Bray*, 115 N.C. App. at 444, 445 S.E.2d at 82; *Mabe*, 115 N.C. App. at 203-06, 444 S.E.2d at 670-72. Our rulings in these cases have turned on the premise that such exclusions "work[] to deny UM protection to Class I insureds [e.g., Mr. and Mrs. Lankford and Scott], thereby subverting the legislative policies articulated in the Financial Responsibility Act." *Hussey*, 115 N.C. App. at 468, 445 S.E.2d at 66; *see Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 554, 340 S.E.2d 127, 129-30 (For purposes of UM/UIM coverage, there are two classes of "insured persons": "(1) the named insured and, while resident of the same household, the spouse of the named

insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle . . . ."), *disc. review denied,* 316 N.C. 731, 345 S.E.2d 387 (1986); *see also* G.S. § 20-279.21(b)(3).

In the words of our Supreme Court: "[w]hen one member of a household purchases first-party [UM/]UIM coverage, it may fairly be said that he or she intends to protect all members of the family unit within the household. The legislature recognized this family unit for purposes of [UM/]UIM coverage . . . ." *Harris v. Nationwide Mut. Ins. Co.,* 332 N.C. 184, 193, 420 S.E.2d 124, 130 (1992). Further, UM/UIM coverage has been described as being "essentially person oriented." *Smith v. Nationwide Mutual Ins. Co.,* 328 N.C. 139, 148, 400 S.E.2d 44, 50 (1991). Therefore, "[m]embers of the first class [here, both Scott and his parents] are 'persons insured' for the purposes of UM coverage regardless of whether the insured vehicle is involved in their injuries[;]" *Bray,* 115 N.C. App. at 443, 445 S.E.2d at 82 (citation omitted), indeed even if "just walking down the street." *Bass v. N.C. Farm Bureau Mut. Ins. Co.,* 332 N.C. 109, 112, 418 S.E.2d 221, 223 (1992) (discussing UIM coverage).

As we concluded in *Bray,* the parents' policy's " 'family member' exclusion for UM coverage is repugnant to the purpose of UM and UIM coverage and is therefore invalid." *Bray,* 115 N.C. App. at 444, 445 S.E.d at 82; *Hussey,* 115 N.C. App. at 468, 445 S.E.2d at 65 (although "the 'owned vehicle' exclusion is clear and unambiguous, . . . the exclusion's effect renders it void against public policy"). Because the effect of Exclusion 7 in the case *sub judice* is "to deny UM protection to Class I insureds, thereby subverting the legislative policies articulated in the Financial Responsibility Act," it is "void against public policy." *Hussey,* 115 N.C. App. at 468, 445 S.E.2d at 65.

Accordingly, we will not give effect to the "family owned" exclusion written into the policy issued to Mr. and Mrs. Lankford. As no other language contained within their insurance contract serves to preclude from coverage the claim for Scott's medical expenses, we hold coverage for such claim is provided by their independent insurance policy issued by Nationwide. The trial court therefore erred in entering summary judgment in favor of Nationwide.

B.

Defendants also argue that as a Class I insured Scott is entitled as well to UM coverage under the policy issued to the parents. We find

this contention irreconcilable with defendants' earlier assertion that "in this case, [Scott] is not claiming on his parents' policy and [Mr. and Mrs. Lankford] are not claiming on [Scott's] policy." Having ruled in defendants' favor at least partly on the basis of that assurance, we therefore decline to discuss this alternative argument in detail.

However, we do note defendants' assertion of Scott's entitlement to recovery under his parents' policy relies in the main upon the notion that Scott's status as a minor when *he* contracted for insurance somehow renders unenforceable as to him certain contractual provisions included in the *parents'* policy. In particular, defendants allege that Exclusion 7 in the *parents'* insurance contract (determined to be contrary to public policy, *see* related discussion *supra*) should not be held to bar Scott's recovery under their policy. This argument surely misses the mark. As Scott was not a party to the insurance contract entered into between the parents and Nationwide, his minority would not appear to have any bearing upon the terms and enforceability thereof.

For the reasons discussed in Part A., *supra*, we reverse the trial court's entry of summary judgment in favor of Nationwide and remand with instructions that summary judgment be entered in favor of Mr. and Mrs. Lankford on the issue of entitlement to coverage under their individual policy of insurance. As the consent judgment apparently entered into by the parties subsequent to the trial court's ruling is not part of the record herein, we express no opinion as to the effect thereof, if any, upon the determination of the parents' claim following remand. Our opinion speaks only to the parents' entitlement to pursue a claim for Scott's medical expenses under the provisions of their independent policy of insurance.

Reversed and remanded.

Judges GREENE and McCRODDEN concur.

Judge McCRODDEN concurred prior to 15 December 1994.