<u>**UNPUBLISHED**</u>

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

──────────────

**No. 05-1942**

──────────────

JIMMY R. ROGERS, JR., by and through his guardian ad litem; QUEEN ROGERS; JOSEPH MICHAEL SCHRAMM, SR., as the Administrator of the Estate of Joseph Michael Schramm, Jr.; KENNETH C. RANSOM, as Ancillary Administrator of the Estate of Thomas C. Keane and the Estate of Joan C. Keane; WILLIAMSON PRODUCE INCORPORATED; WILLIAMSON FARMS, INCORPORATED; WILLIAMSON FREIGHT, INCORPORATED; WILLIAMSON TRUCK LINES, INCORPORATED; WILLIAMSON DISTRIBUTORS, INCORPORATED; WILLIAMSON BROTHERS, LLC; WILLIAMSON TRANSPORT COMPANY, INCORPORATED; WILLIAM R. WILLIAMSON; LARRY HORNE; BOBBY R. WILLIAMSON,

                                Plaintiffs - Appellants,

        versus


PENN NATIONAL INSURANCE COMPANY; PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY; PENN NATIONAL SECURITY INSURANCE COMPANY,

                                Defendants - Appellees,

        and


CANAL INSURANCE COMPANY,

                                Defendant.


──────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (CA-04-5-F-7)

Argued: May 23, 2006             Decided: August 8, 2006

---

Before TRAXLER and GREGORY, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Walker Yeatman Worth, Jr., RUSS, WORTH, CHEATWOOD & GUTHRIE, Fayetteville, North Carolina, for Appellants. David Leonard Brown, PINTO, COATES, KYRE & BROWN, P.L.L.C., Greensboro, North Carolina, for Appellees. **ON BRIEF:** H. Mitchell Baker, BAKER & SLAUGHTER, P.A., Wilmington, North Carolina, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

In this declaratory judgment action, we are asked to decide whether an umbrella insurance policy (the "Umbrella Policy") issued by defendant Pennsylvania National Mutual Casualty Insurance Company ("Penn National") to Williamson Produce, Inc. ("Williamson Produce") covers injuries arising from a motor vehicle accident. By the plain language of the Umbrella Policy, we are constrained to conclude that it does not.

On August 7, 2003, a tractor-trailer collided with a line of traffic stopped on U.S. Interstate 95 near Emporia, Virginia, killing Joseph Schramm, Jr., Joan C. Keane and Thomas C. Keane, and seriously injuring Jimmy R. Rogers, Jr. The tractor portion of the vehicle belonged to Williamson Produce and was under lease to Williamson Transport Co., Inc. ("Williamson Transport"). At the time of the accident, the tractor was returning from Virginia, where it had delivered Williamson Produce goods.

The tractor was covered under a liability insurance policy issued by Canal Insurance Company ("Canal") to Williamson Produce. That policy provided $1 million of liability insurance coverage for each occurrence. J.A. 431. Canal deposited $1 million with the district court for claims arising out of the accident. Having satisfied its obligations to its insured, Canal was subsequently dismissed from the action.

3

Williamson Produce also carried two types of insurance issued by Penn National. First, Williamson Produce was covered under a Business Automobile Policy, see J.A. 266-313, which extended $1 million in liability insurance to: (1) automobiles described in the policy; (2) hired vehicles; and (3) nonowned vehicles. Id. at 266, 271. Because the tractor does not fit within any of these categories, the parties properly agree that injuries arising from the accident are not covered under the Business Automobile Policy. Second, Williamson Produce was insured under the Umbrella Policy, which provided up to $2 million in coverage. J.A. 314-52. Thus, the dispositive issue is whether the Umbrella Policy extended coverage to the tractor at the time of the accident.

This action was commenced in North Carolina Superior Court on November 26, 2003, by, or on behalf of, persons injured or killed during the August 2003 accident, who sought a declaration that their injuries were covered by Penn National's Umbrella Policy.[1] The case was subsequently removed to federal court. At the close of discovery, the defendants and plaintiffs moved for summary

---

[1]Suit was initially filed by the following injured parties: Jimmy R. Rogers, Jr. by and through his Guardian Ad Litem Queen Rogers; Joseph Michael Schramm, Sr. as Administrator of the Estate of Joseph Michael Schramm, Jr.; and Kenneth C. Ransom as Ancillary Administrator of the Estates of Thomas C. Keane and Joan C. Keane. After the parties were realigned to ensure complete diversity of citizenship, former defendants Williamson Produce, Inc.; Williamson Truck Lines, Inc.; Williamson Distributors, Inc.; Williamson Brothers, LLC; Williamson Transport Co., Inc.; Williamson Farms, Inc.; Williamson Freight, Inc.; William R. Williamson; Bobby R. Williamson; and Larry Horne became plaintiffs. J.A. 37.

judgment. The district court granted the defendants'[2] motion for summary judgment and denied the plaintiffs' cross-motion. This appeal followed.

We review a district court's grant of summary judgment de novo, viewing all factual inferences in the light most favorable to the nonmovant. Cont'l Airlines, Inc. v. United Airlines, Inc., 277 F.3d 499, 508 (4th Cir. 2002). Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

This case involves a question of contract interpretation, which is also subject to de novo review. Seabulk Offshore Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004). Where, as here, subject-matter jurisdiction is premised on diversity of citizenship, this Court must apply the substantive law of the forum state. See Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 623-24 (4th Cir. 1999). Because the policy at issue was executed in North Carolina, the law of that forum controls. See Tanglewood Land Co. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980) (providing that

---

[2]Penn National Insurance Company and Penn National Security Insurance Company were also named as defendants. The defendants asked that both entities be dismissed from the action. J.A. 51. The district court did not rule on that request, concluding instead that no action could lie against any of the defendants.

in North Carolina, "the interpretation of a contract is governed by the law of the place where the contract was made."). When construing an insurance contract under North Carolina law, "if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." <u>Woods v. Nationwide Mut. Ins. Co.</u>, 246 S.E.2d 773, 777 (N.C. 1978).

By the Umbrella Policy's unambiguous terms, the plaintiffs are not entitled to coverage for injuries sustained during the accident. The Umbrella Policy contains Endorsement form 70 21 54 0103, which places the following limit on coverage:

> It is agreed that such insurance as is afforded by the policy shall not apply to the ownership, maintenance, operation, use, loading or unloading, or entrustment to others of any "auto" unless such liability is covered by valid and collectible "underlying insurance" <u>as listed in the Schedule of Underlying Insurance</u>, for the full limit shown therein, and then only for such hazards for which coverage is afforded under said "underlying insurance."

J.A. 322 (emphasis added). Penn National's Business Automobile Policy is the only automobile liability policy <u>listed in the Schedule of Underlying Insurance</u>. J.A. 317. Thus, the Umbrella Policy only covers automobile accidents that are also covered under the Business Automobile Policy. As discussed above, the Business Automobile Policy does not cover the tractor. By extension, the Business Automobile Policy therefore also does not cover third

6

parties who were injured in an accident involving the tractor. As a result, we must conclude that the Umbrella Policy, like the Business Automobile Policy, does not cover the plaintiffs' injuries.[3]

In an effort to avoid this conclusion, the plaintiffs argue that the Umbrella Policy, independent of endorsements, extends coverage to injuries arising from the accident. In effect, the plaintiffs' position requires that we ignore policy language. This we cannot do. Robbins v. C. W. Myers Trading Post, Inc., 117 S.E.2d 438, 441 (N.C. 1960) ("Individual clauses in an agreement and particular words must be considered in connection with the rest of the agreement, and all parts of the writing, and every word in it, will, if possible, be given effect.").

Because the unambiguous language of the Umbrella Policy leads to the inescapable conclusion that the accident was not covered by any of Penn National's policies, we affirm the district court's grant of summary judgment.

AFFIRMED

---

[3]Further, this conclusion is consistent with the premise that the purpose of umbrella coverage is to extend the amount, not the scope of coverage. See North Carolina Ins. Guar. Ass'n v. Century Indem. Co., 444 S.E.2d 464, 470-71 (N.C. Ct. App. 1994) (citing approvingly Globe Indem. Co. v. Jordan, 634 A.2d 1279, 1283 (Me. 1993) ("The purpose of an umbrella policy is to protect the insured in the event of catastrophic circumstances when the insurer's liability would exceed the limits of its underlying policy. It is designed to expand the amount, but not the scope of coverage")).