HARRIETT HURST TURNER AND JOHN HENRY HURST v. THE HAMMOCKS BEACH
   CORPORATION, NANCY SHARPE CAIRD, SETH DICKMAN SHARPE, SUSAN
   SPEAR SHARPE, WILLIAM AUGUST SHARPE, NORTH CAROLINA STATE
   BOARD OF EDUCATION, AND ROY A. COOPER, III, IN HIS CAPACITY AS ATTORNEY
   GENERAL OF THE STATE OF NORTH CAROLINA

No. 450A08

(Filed 28 August 2009)

**1. Appeal and Error— appealability—interlocutory denial of
motion to dismiss—collateral estoppel**

An appeal from the denial of a motion to dismiss involved a
substantial right and was immediately appealable where the
opposing party raised collateral estoppel from a prior settlement.

**2. Trusts— impractical purpose—termination—prior settle-
ment—more than one interpretation**

The trial court properly denied defendants' motion to dismiss
an action arising from the termination of a trust where the pur-
pose of the trust had become impossible and a prior consent
judgment dealt with the distribution of assets. The consent judg-
ment is reasonably susceptible to a reading that would preserve
plaintiffs' future interests, and collateral estoppel does not bar
litigation of the question of whether the consent judgment was
intended to foreclose all of plaintiffs' rights in the land.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a
divided panel of the Court of Appeals, 192 N.C. App. ——, 664 S.E.2d
634 (2008), reversing an order denying defendant's motion to dismiss
entered on 23 August 2007 by Judge R. Allen Baddour, Jr. in Superior
Court, Wake County, and remanding to the trial court with instruc-
tions to grant defendant's motion. Heard in the Supreme Court on 25
February 2009.

*The Francis Law Firm, PLLC, by Charles T. Francis, for
plaintiff-appellants.*

*Hunton & Williams LLP, by Frank E. Emory, Jr., for defendant-
appellee The Hammocks Beach Corporation.*

NEWBY, Justice.

This case presents two issues. First we must determine whether
the trial court's interlocutory order denying defendant's motion to

dismiss is suitable for immediate appellate review. If that order is immediately appealable, we must then decide whether the trial court erred in denying defendant's motion to dismiss. We hold that the interlocutory order at issue affects a substantial right of defendant, and we therefore affirm the Court of Appeals' conclusion that the order is immediately appealable. We further hold that the allegations of the complaint are sufficient to state a claim upon which relief might be granted, and thus the trial court properly denied the motion to dismiss.

The controversy at hand arises out of the creation of a trust, which accompanied a real estate transaction that took place in 1950. Dr. William Sharpe owned 810 acres of property in Onslow County known as "The Hammocks," and he intended to devise The Hammocks to his friends John and Gertrude Hurst. Upon learning of Dr. Sharpe's intentions, Ms. Hurst, who had formerly been a teacher in the then-racially-segregated public school system, requested that Dr. Sharpe instead make a charitable gift of the property for the benefit of African-American educators and youth organizations. In accordance with Ms. Hurst's wishes, Dr. Sharpe deeded The Hammocks to the nonprofit Hammocks Beach Corporation "in trust for recreational and educational purposes for the use and benefit of the members of The North Carolina Teachers Association, Inc. and such others as are provided for in the Charter of the Hammocks Beach Corporation, Inc." That charter stated that the corporation's purpose was to administer The Hammocks "primarily for the teachers in public and private elementary, secondary and collegiate institutions for Negroes in North Carolina . . . and for such other groups as are hereinafter set forth."

Anticipating that circumstances might arise making it impossible or impracticable to use The Hammocks for the trust purposes, the 1950 deed stated:

IT IS FURTHER PROVIDED AND DIRECTED by the said grantors, parties of the first part, that if at any time in the future it becomes impossible or impractical to use said property and land for the use as herein specified and if such impossibility or impracticability shall have been declared to exist by a vote of the Majority of the directors of the Hammocks Beach Corporation, Inc., the property conveyed herein may be transferred to The North Carolina State Board of Education, to be held in trust for the purpose herein set forth, and if the North Carolina State Board of Education shall refuse to accept such property for the

**TURNER v. HAMMOCKS BEACH CORP.**

[363 N.C. 555 (2009)]

purpose of continuing the trust herein declared, all of the property herein conveyed shall be deeded by said Hammocks Beach Corporation, Inc. to Dr. William Sharpe, his heirs and descendants and to John Hurst and Gertrude Hurst, their heirs and descendants; The Hurst family shall have the mainland property and the Sharpe family shall have the beach property . . . .

As of 1987, the North Carolina Attorney General had advised that the State Board of Education had "no interest in succeeding Hammocks Beach Corporation as trustee and would not agree to do so." The Attorney General and the State Board of Education thus moved to be dismissed as parties from the present action, and the trial court entered an order granting that motion on 24 August 2007.

In 1986 the Hammocks Beach Corporation filed a declaratory judgment action seeking to quiet title to The Hammocks and ensure fulfillment of the purposes of the trust created by Dr. Sharpe. According to the complaint in the instant case, in response to the 1986 request for declaratory relief,

the Sharpe and Hurst heirs contended that fulfillment of the trust terms had become impossible or impracticable, that The Hammocks Beach Corporation had acted capriciously and contrary to the intent of the settlor in not declaring its recognition of such, and that the court should declare the trust terminated and either mandate a conveyance of all of the property to the Sharpe and Hurst families or adjudicate title in their names.

Prior to trial in the 1986 action, the parties reached a settlement and signed a consent judgment, which was entered by the trial court on 29 October 1987 ("the 1987 consent judgment" or "the consent judgment").

Plaintiffs brought this action in December 2006, alleging that "fulfillment of the trust terms has become impossible or impracticable" and seeking an accounting, termination of the trust, and damages for breach of fiduciary duty. On 5 July 2007, before any discovery in the case, defendant filed a motion under N.C.G.S. § 1A-1, Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, asserting that the issue of plaintiffs' rights to the property now in question (a portion of The Hammocks) had already been determined by the 1987 consent judgment and that relitigation is barred by collateral estoppel. The trial court entered an order denying defendant's motion to dismiss on 23 August 2007. Defendant sought review, and

the Court of Appeals concluded the order was immediately appealable. The Court of Appeals went on to reverse the trial court's order, holding that defendant's motion to dismiss should have been granted.

[1] We begin our review by determining whether the interlocutory order denying defendant's motion to dismiss is immediately appealable. "Interlocutory orders are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court in order to settle and determine the entire controversy." *Carriker v. Carriker*, 350 N.C. 71, 73, 511 S.E.2d 2, 4 (1999) (citing *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)). As a general rule, interlocutory orders are not immediately appealable. *Davis v. Davis*, 360 N.C. 518, 524, 631 S.E.2d 114, 119 (2006). However, "immediate appeal of interlocutory orders and judgments is available in at least two instances": when the trial court certifies, pursuant to N.C.G.S. § 1A-1, Rule 54(b), that there is no just reason for delay of the appeal; and when the interlocutory order affects a substantial right under N.C.G.S. §§ 1-277(a) and 7A-27(d)(1). *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999).

The trial court did not certify for immediate review its order denying defendant's motion to dismiss. Defendant's argument in favor of appealability is that the denial of a motion to dismiss a claim for relief affects a substantial right when the motion to dismiss makes a colorable assertion that the claim is barred under the doctrine of collateral estoppel. We agree. Under the collateral estoppel doctrine, "parties and parties in privity with them . . . are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (citations omitted). The doctrine is designed to prevent repetitious lawsuits, and parties have a substantial right to avoid litigating issues that have already been determined by a final judgment. We therefore hold that a substantial right was affected by the trial court's denial of defendant's motion to dismiss, and we proceed to the merits of defendant's appeal.

[2] The remaining issue before this Court is whether plaintiffs' claims for relief are, in fact, barred under the collateral estoppel doctrine. To successfully assert collateral estoppel as a bar to plaintiffs' claims, defendant

would need to show that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an

## TURNER v. HAMMOCKS BEACH CORP.

[363 N.C. 555 (2009)]

issue actually litigated and necessary to the judgment, and that both [defendant] and [plaintiffs] were either parties to the earlier suit or were in privity with parties.

*Thomas M. McInnis & Assocs. v. Hall,* 318 N.C. 421, 429, 349 S.E.2d 552, 557 (1986) (citing *King,* 284 N.C. at 357-60, 200 S.E.2d at 805-08).

We begin our consideration of the merits of defendant's collateral estoppel claim by determining whether the issue of plaintiffs' remaining rights in the contested land is identical to an issue already decided by the 1987 consent judgment. If the consent judgment fully extinguished all of plaintiffs' rights in the land, then collateral estoppel bars litigation of whether plaintiffs retain any rights in the property. We emphasize at the outset that we are reviewing the trial court's ruling on a motion to dismiss under Rule 12(b)(6). When ruling on such a motion to dismiss, the trial court is to treat the plaintiff's factual allegations as true. *See, e.g., State ex rel. Cooper v. Ridgeway Brands Mfg., LLC,* 362 N.C. 431, 442, 666 S.E.2d 107, 114 (2008) (citing *Stein v. Asheville City Bd. of Educ.,* 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006)). Furthermore, "the complaint is to be liberally construed, and the trial court should not dismiss the complaint unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 444, 666 S.E.2d at 116 (internal quotation marks omitted) (quoting *Meyer v. Walls,* 347 N.C. 97, 111-12, 489 S.E.2d 880, 888 (1997) (citation and brackets omitted)). Thus, in determining whether the consent judgment foreclosed all of plaintiffs' rights in the land at issue here, we view the forecast of evidence in the light most favorable to plaintiffs, giving them the benefit of every reasonable inference that can be drawn therefrom. *See Gossett v. Metro. Life Ins. Co.,* 208 N.C. 152, 157, 179 S.E. 438, 441 (1935).

"A consent judgment is a court-approved contract subject to the rules of contract interpretation." *Walton v. City of Raleigh,* 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (citing *Yount v. Lowe,* 288 N.C. 90, 96, 215 S.E.2d 563, 567 (1975)).

[T]he goal of construction is to arrive at the intent of the parties when the [contract] was [executed]. . . . The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect. . . . [I]f the meaning of the [contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written . . . .

*Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978). However, "if the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent, not to contradict, but to show and make certain what was the real agreement between the parties." *Root v. Allstate Ins. Co.*, 272 N.C. 580, 590, 158 S.E.2d 829, 837 (1968) (internal quotation marks omitted) (quoting *Hite v. Aydlett*, 192 N.C. 166, 170, 134 S.E. 419, 421 (1926) (citation omitted)). Viewing the evidence in the light most favorable to plaintiffs, we must determine whether the 1987 consent judgment, on its face, can only reasonably be interpreted as fully extinguishing plaintiffs' rights in the land at issue.

As the trial court summarized in the 1987 consent judgment, the parties to the 1986 declaratory judgment action agreed that "Hammocks Beach Corporation as trustee would hold title to an appropriate portion of The Hammocks free of any claims of the Sharpes and Hursts and with broader administrative powers, with the remainder of said property being vested in the Sharpe and Hurst defendants." The land now at issue is the "appropriate portion of The Hammocks" to which defendant holds title under the consent judgment, and defendant argues that the consent judgment fully expunged all of plaintiffs' rights in that land. Defendant relies primarily on the consent judgment's statement that the property vested in the Hammocks Beach Corporation "shall be free and clear of *any* rights of the heirs of Dr. William Sharpe or of Gertrude Hurst or of the heirs of John and Gertrude Hurst." (Emphasis added.) If this were the consent judgment's only provision relevant to the extent of the parties' interest in the land now in question, we would agree with defendant that plaintiffs' future interests were extinguished. However, the consent judgment contains additional language that bears on the issue, and we must strive to give effect to "every word and every provision." *Woods*, 295 N.C. at 506, 246 S.E.2d at 777.

Most notably, the consent judgment consistently refers to defendant as "Hammocks Beach Corporation, trustee," and declares that defendant holds title to the property now at issue "subject to the trust terms set forth in the . . . deed dated August 10, 1950 . . . and in Agreement dated September 6, 1950." In subjecting defendant's title to the terms of the trust, the consent judgment does not exclude the trust terms regarding impossibility or impracticability, and those terms unquestionably grant future interests to "Dr. William Sharpe, his heirs and descendants and to John Hurst and Gertrude Hurst, their heirs and descendants." Nor does the consent judgment contain

language that clearly supersedes the terms of the original trust in the event of impossibility or impracticability.

We also note that the Sharpe and Hurst families' rights in the land at issue under the 1950 deed and corresponding agreement were apparently not limited to future interests. According to the complaint in the instant case:

> The terms of the trust Deed from Dr. Sharpe to The Hammocks Beach Corporation, as amplified by the simultaneously executed Agreement, subjected the trust property to numerous rights of use and possession in the Sharpe and Hurst families, including the right to cultivate, to quarry, to raise livestock, to travel over the land incident to taking fin fish and shellfish in adjacent waters, and to reside there.

Although "any" is a strong word, in light of the other peculiarities of the 1987 consent judgment, the provision that the property vested in defendant "shall be free and clear of *any* rights of the heirs of Dr. William Sharpe or of Gertrude Hurst or of the heirs of John and Gertrude Hurst" may reasonably be read as intending only to extinguish plaintiffs' present rights of use and possession. (Emphasis added.)

Finally, as did the Court of Appeals, we observe with curiosity defendant's ability under the consent judgment to encumber the property now at issue and to sell "a portion thereof." It may seem inconsistent with plaintiffs' retention of a future interest in the land in question to allow defendant, without plaintiffs' consent, to convey interests in that land to third parties who would not be bound by the trust terms. We also point out, however, that the consent judgment only allows defendant to encumber or sell the property with the court's approval and only "for the purpose of generating funds for use in furtherance of the terms of the trust." Indeed, whereas the 1987 consent judgment vests the Sharpe and Hurst descendants "with fee simple title" to the portions of land they received under that judgment, the property now at issue is "vested in Hammocks Beach Corporation *as trustee*." (Emphasis added.) Defendant's limited ability to encumber and sell the land, therefore, like the rest of the consent judgment, has ambiguous implications with respect to whether plaintiffs retain future interests in the land.

In summary, when plaintiffs' factual allegations are taken as true and all reasonable inferences are drawn in their favor, it does not

CAROLINA POWER & LIGHT CO. v. EMPLOYMENT SEC. COMM'N OF N.C.

[363 N.C. 562 (2009)]

appear "beyond doubt" that plaintiffs are not entitled to relief. *State ex rel. Cooper*, 362 N.C. at 444, 666 S.E.2d at 116 (citations and internal quotation marks omitted). Read as a whole and on its face, the 1987 consent judgment is unclear as to what should happen if adherence to the trust terms becomes impossible or impracticable, and thus the consent judgment does not admit "only one reasonable interpretation" regarding the extent of plaintiffs' interests in the land at issue. *Woods*, 295 N.C. at 506, 246 S.E.2d at 777. Because the consent judgment is reasonably susceptible to a reading that would preserve plaintiffs' future interests in the realty, collateral estoppel does not bar litigation of the question whether the consent judgment was intended to foreclose all of plaintiffs' rights in the land. We therefore hold that the trial court properly denied defendant's motion to dismiss.

We affirm the portion of the Court of Appeals opinion holding that the trial court's order is immediately appealable, and we reverse the Court of Appeals' holding that the trial court erred in denying defendant's motion to dismiss. This case is remanded to the Court of Appeals for further remand to the trial court for proceedings not inconsistent with this opinion.[1]

AFFIRMED IN PART; REVERSED IN PART.

---

1. Although the Court of Appeals stated that it did not reach all of defendant's assignments of error, we find the remaining assignments of error to be sufficiently included in the second issue resolved by this opinion. The Court of Appeals is not to consider defendant's remaining assignments of error before remanding this case to the trial court.