DILLON, Judge, dissenting.
This appeal involves a number of actions brought by landowners claiming that NCDOT has "taken" interests in their land by filing of maps showing future highway projects pursuant to the Map Act. The trial court entered an order determining that *503 NCDOT's filing of the maps constituted a taking and directed NCDOT to post deposits (which may be taken down by the landowners) and to file maps or plats regarding the taking, pursuant to N.C. Gen. Stat. § 136-111. NCDOT has appealed the trial court's order, essentially arguing that since it has not admitted to the taking, it cannot be forced to post deposits and file maps/plats at this stage of the litigation.
I agree with the majority that NCDOT has factually admitted to a taking in its pleadings and, therefore, must comply with the order of the trial court. I disagree, however, with the majority's mandate to dismiss the appeal based on the majority's conclusion that we lack appellate jurisdiction to consider NCDOT's appeal. Rather, I conclude that we have jurisdiction to consider the merits of NCDOT's argument. However, on the merits, I would side with the landowners (as the majority essentially has done) and would affirm the order of the trial court.
In determining our appellate jurisdiction, we are not to look at the merits of NCDOT's claim to a substantial right in answering the threshold jurisdictional question. To do so would, in the words of the United States Supreme Court, "conflat[e] the jurisdictional question with the merits of the appeal." Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 628, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ("Jurisdiction over the appeal, however, must be determined by focusing on the category of order appealed from, rather than upon the strength of the grounds for reversing the order.") In other words, *422 in considering whether we have appellate jurisdiction, we are to ask whether the right claimed by the appellant is one that is substantial and whether the order appealed from would affect that right, assuming appellant's claim to that right has merit. Only after we determine that we have jurisdiction do we consider the merits of the appellant's argument.
Our Supreme Court's opinion in Turner v. Hammocks Beach Corp. , 363 N.C. 555, 681 S.E.2d 770 (2009), is extremely instructive, if not controlling on this point. In that case, the defendants moved the trial court to dismiss an action based on collateral estoppel; the trial court denied the motion; the defendants appealed; and a panel of our Court held that we had jurisdiction to review the interlocutory order and, on the merits, agreed with the defendants that collateral estoppel was implicated and, therefore, reversed the trial court's order. Id. The plaintiffs appealed to our Supreme Court, which recognized the two separate issues before it were to first consider the existence of appellate jurisdiction and then consider the merits of the defendants' collateral estoppel argument:
"This case presents two issues. First we must determine whether the trial court's interlocutory order denying defendant's motion to dismiss is suitable for immediate appellate review. If that order is immediately appealable, we must then decide whether the trial court erred in denying defendant's motion to dismiss."
Id. at 555-56, 681 S.E.2d at 772. On the first issue, our Supreme Court, without considering the merits of the defendants' argument, concluded that there was appellate jurisdiction over the appeal:
"[Collateral estoppel] is designed to prevent repetitious lawsuits, and parties have a substantial right to avoid litigating issues that have already been determined by a final judgment. We therefore hold that a substantial right was affected by the trial court's denial of defendant's motion to dismiss, and proceed to the merits of defendant's appeal."
Id. at 558, 681 S.E.2d at 773. Then , on the second issue, our Supreme Court addressed the merits of the defendants' collateral estoppel argument and concluded that the defendants' collateral estoppel argument had no merit after all:
"We affirm the portion of the Court of Appeals opinion holding that the trial court's order is immediately appealable, [but] we reverse the Court of Appeals' holding *423 that the trial court erred in denying defendant's motion to dismiss."
Id. at 562, 681 S.E.2d at 775-76.[1]
Turning to the issue of whether NCDOT has claimed a right that is "substantial,"
*504 NCDOT argues that the trial court's order "compelling [NCDOT] to make deposits, conduct title examinations, prepare maps, prepare appraisals, and pay relocation expenses" affects a substantial right.[2] Binding precedent compels us to conclude that NCDOT has, indeed, succeeded in claiming a right which is substantial. Specifically, in an opinion affirmed by our Supreme Court, we held that "an order granting partial summary judgment on the issue of NCDOT's liability to pay just compensation for a claim for inverse condemnation is an immediately appealable interlocutory order affecting a substantial right[.]" Kirby v. NCDOT , 239 N.C. App. 345, 354, 769 S.E.2d 218, 227 (2015), aff'd 368 N.C. 847, 786 S.E.2d 919 (2016). And here, the trial court determined that NCDOT was liable to pay just compensation in these inverse condemnation actions.
Further, our Supreme Court and our Court have held in other contexts that an interlocutory order which compels a party to pay money or which forces a party to do something affects a substantial right of that party and that, therefore, the party has the right to immediate review *424 of the order. For instance, in Wachovia Realty v. Housing, Inc. , our Supreme Court held that an interlocutory order directing a party to pay money to the opposing party affected a substantial right and that it was error for our Court to have dismissed the appeal "without passing upon the merits thereof." Wachovia Realty v. Housing, Inc. , 292 N.C. 93, 100, 232 S.E.2d 667, 672 (1977). See also Rockford-Cohen Group, LLC v. N.C. Dep't. of Ins. , 230 N.C. App. 317, 320, 749 S.E.2d 469, 472 (2013) (holding that preliminary injunction against private company affected a substantial right).
Now reaching the merits of NCDOT's argument, I agree with the majority that the trial court got it right. Section 136-111 requires NCDOT to post a deposit and file maps/plats in an inverse condemnation action where NCDOT has admitted to a taking . And NCDOT has essentially admitted to a taking here by admitting to certain facts. Specifically, our Supreme Court has held that a taking occurs where NCDOT files a map pursuant to the Map Act and the map covers the property of the landowner bringing the inverse condemnation claim. Kirby v. NCDOT , 368 N.C. 847, 856, 786 S.E.2d 919, 926 (2016) ("By recording the corridor maps [under the Map Act], NCDOT effectuated a taking of fundamental property rights."). And, based on Kirby , NCDOT here has factually admitted to a taking by admitting that it has filed maps pursuant to the Map Act which cover the properties of the Plaintiffs. It is not relevant that NCDOT has also pleaded that it has not engaged in a taking, since this allegation is a mere legal conclusion. NCDOT has admitted facts which, as a matter of law, constitute a taking. It must, therefore, follow the procedures set forth in Section 136-111 when it has admitted to a taking.
In conclusion, I believe that NCDOT has clearly articulated a substantial right that, if meritorious, is affected by the order of the *505 trial court. The trial court has determined NCDOT to be liable to pay just compensation and has ordered NCDOT to engage in an expensive process of surveying and appraising a large number of tracts in order to file maps and to post deposits. But on the merits, I believe that the trial court acted appropriately in ordering NCDOT to follow this procedure based on Section 136-111. Accordingly, my vote is to affirm the order of the trial court.

In NCDOT v. Blue , 147 N.C. App. 596, 556 S.E.2d 609 (2001), we held that we had jurisdiction over NCDOT's appeal of an interlocutory order based on its claimed right to sovereign immunity. Id. at 600, 556 S.E.2d at 615. But then after recognizing our appellate jurisdiction, we rejected the merits of NCDOT's sovereign immunity argument, concluding that NCDOT had waived sovereign immunity; and, therefore, we affirmed the trial court's order. Id. at 601, 556 S.E.2d at 616. In other words, we did not dismiss the appeal based on our determination on the merits of NCDOT's claim of sovereign immunity. Rather, we assumed the NCDOT's claim had merit in determining our jurisdiction; and, only after invoking appellate jurisdiction did we consider the merits. See also Meherrin Indian Tribe v. Lewis , 197 N.C. App. 380, 677 S.E.2d 203 (2009) (denying an appellee's motion to dismiss appeal of an interlocutory order where the appellant claimed sovereign immunity, but affirming the order after determining that the Meherrin Tribe was not an indigenous tribe which enjoyed sovereign immunity).

NCDOT makes this argument under the heading of "sovereign immunity." The majority rejects this argument in part, because "sovereign immunity" is a bar against being sued and this litigation has progressed too far for it to be asserted. Though NCDOT labels its argument as a "sovereign immunity" argument, the thrust of their argument, at least in part, does not concern their immunity from suit, but rather that the trial court's order determines that NCDOT is liable to pay just compensation and directs NCDOT to expend its resources to file maps and post deposits. It is this argument where I find NCDOT has alleged a substantial right, whatever its label.